## AT NISI PRIUS, AT WASHINGTON,

### MAY ASSIZES, 1795.

CORAM, M'KEAN CHIEF JUSTICE, AND YEATES.

## Lessee of Samuel Howard *against* John Pollock and John Burk.

Application for leave to amend *narr.* in ejectment cannot be made at Nisi Prius. Claims under improvements may be deemed imperfect rights to lands, and depend on a variety of circumstances.

Awards not pursuing the submission cannot be received in evidence.

EJECTMENT for a messuage of 318 acres of land in township.

Previous to the jury being sworn, Mr. Woods for the plaintiff, finding that the day of his demise was laid before the date of the warrant under which he claimed, and that the term had expired, moved the court for leave to amend the date of the demise and to enlarge the term.

*510] *The court referred him to Mr. J. Ross for his consent as the counsel for the defendant; but though he was willing that the term should be extended, he declined agreeing to any other amendment.

And *per cur.* We cannot entertain such motions at Nisi Prius, which is peculiarly appropriated to the trial of causes. Though great liberality is now used in ejectment cases, as to enlarging the term and confirming verdicts where trials have been had upon the merits, it may be doubtful how far the court would choose to go in making an entire new lease. The old authorities (1 Vent. 361, 1 Show. 207, 2 Barnes, 13, 154, Contra Comb. 290, Curth. 178, 4 Burr. 2447. See 2 Black. Rep. 940, 2 Burr. 1161, Cowp. 841, 844.) are against such an amendment clearly, and we do not recollect such a motion having been made in Pennsylvania.

Mr. Woods. I shall not need the consent of the adverse counsel to go on with my equitable title. The plaintiff can try the right, and if he succeeds will recover his damages and costs. *Quod fuit concessum.* (Vid. 12 Mod. 125.)

He then opened the plaintiff's claim as follows. Matthew Karr made a small improvement on a plantation in 1768, by deadening a few trees and making some brush heaps. In the succeeding year, Joseph Proctor came up and settled near him. Some differences arose between them, but at length they mutually fixed on a line between themselves and agreed that it should be marked. This was accordingly done, and Proctor built a snug cabin, cleared six acres of land, lived thereon two years, and raised grain during that period. He then sold his improvement to the lessor of the plaintiff for 30l., who possessed himself thereof and lived thereon for three years, until he was driven off by the savages. Karr sold his

[Howard's Lessee v. Pollock.]

improvement to one Charles Burkham, who again sold to Pollock, one of the defendants. Buck is the tenant of Pollock. Several witnesses will prove this marked consentable line, (as it is called,) shewn by the two original settlers; and we hope to establish, that Pollock well knew of this boundary when he purchased, and that he was forewarned not to go over it.

Exception was taken to this testimony. The plaintiff must recover according to his title at the time of the demise laid in his declaration, which is on the 2d October 1780. If this title then was not good, it shall not defeat the equitable title of the defendant by improvement aided by a warrant dated 20th January *1785, and a survey made on 17th Feb- [*511 ruary following, before the commencement of the suit.

Whatever effect subsequent laws may be supposed to have on the doctrine of improvements, they cannot affect the present question, which must be judged of by the existing laws of 1780. It is also remarkable, that the act of December 30th 1786, (2 Dall. St. Laws, 487,) recites, that settlers were not secured in their pre-emption rights, by the law of 1st April 1784, and affords them a temporary advantage, which has since been continued by subsequent acts. If under any previous law, or established custom, the titles of improvers had been fixed and ascertained, there could have been no necessity for passing this act.

It was answered by the plaintiff, that though he conceded he could recover only according to his right at the time of the feigned lease, yet different acts of the legislature, expressive of their sense of improvements, had shewn in what light real settlements should be viewed, and were declaratory of former established usages. It was not meant to carry the improvement doctrines to the wild extremes, to which they were brought shortly before the revolution; but that a *bona fide* improvement made *animo residendi*, pursued in all its stages and never abandoned, had certain benefits annexed to it from the uniform practice of the land office, and of courts of justice, was now the generally received opinion of the western country; and it was apprehended, these advantages were sanctified by divers laws of the state.

The state of Virginia recognized by a municipal regulation of May 3d 1779, actual settlers, "who had made a crop of "corn, or resided on the lands for one year before January 1st "1778," as freeholders of that commonwealth and entitled to the farms they occupied, not exceeding 400 acres. An unfair advantage would be had against the Pennsylvania settlers, particularly those near the disputed territory, unless a similar doctrine was extended to them also.

The public advertisement on opening the land office for the new purchase on 3d April 1769, commonly called the pre-

[Howard's Lessee v. Pollock.]

amble to the lottery, explicitly declares, that "those who had "settled plantations, should have a preference."

The act of 1st April 1784, opening the land office, states in § 1, the equal justice due to all persons holding lands, that they should have equal opportunities of completing their titles; and in § 3, directs, that each applicant shall produce a certificate, specifying, whether the lands are improved or not, that interest may be charged accordingly. (2 Dall. St. Laws, 202.)

*512]     *The funding law of 16th March 1785, § 31, directs, that improvements shall be subject to taxation, and thereby recognizes those claims.

The limitation act of 26th March 1785, § 5, declares, that no persons claiming lands in consequence of any prior settlement, improvement or occupation without other title, shall recover the same, unless they have had the peaceable possession thereof within seven years before action brought; with a proviso in favour of persons driven from their possessions by the savages, &c. (2 Dall. St. Laws, 28.) Now it is evident, that here is a necessary implication from the words of the law, that an ejectment may be maintained under a prior settlement, improvement or occupation, where there has been a possession within seven years next before the commencement of the suit, by the party, his ancestors, or predecessors.

As to the argument drawn from the penning of the preamble of the act of 30th December 1786, it may be obviated, by considering that it arose from the abundant caution of the legislature and from some former decisions at law.

By the court. Cases of improvements depend on a great variety of circumstances, all of which must be taken to in consideration by a jury. The practice of the late proprietary land office, and divers laws since the revolution, have annexed to them certain claims,* so that they may be now

---

* Besides the laws cited, see the act for raising 5,700,000 dollars, passed 10th October 1779, which declares, ? 11, that lands held by improvement are thereby made taxable.

Act for emitting 500,000l. in bills of credit, passed 7th April 1781, which enacts, ? 7, that together with the guarrantee of the state, so much as shall be sufficient of the arrears due for lands heretofore granted or claimed by virtue of warrants, locations, surveys, or any other title that might be deemed good and valid according to the law, custom, or usage in force under the late government, shall be pledged as a fund out of which the said bills of credit shall be redeemed, &c.

Act passed 5th April 1782, instituting a board of property, to hear and determine in all cases of controversy, touching escheats, &c. rights of preemption promises, imperfect titles or otherwise which may arise in the land office. (2 Dall. St. Laws, 21.)

Act passed 12th March 1783, ? 6. (2 Dall. St. Laws, 90.)

Act passed 22d April 1794, ? 2, directing that no warrants shall issue after 15th June 1794, for the lands therein mentioned, except in favour of persons claiming under some settlement and improvement.

Act passed 22d September 1794, ? 1, declaring that after passing of the law, no applications shall be received in the land office for any lands, except such whereon a settlement has been or thereafter shall be made, grain raised, and a person or persons residing thereon.

[Howard's Lessee *v.* Pollock.]

classed among the imperfect rights to lands.   It is a matter of fair argument, when the tes*timony is given, what will be its operation?   We will therefore hear the evidence.   It is a more favourable case than improvements generally are, there being an agreed line between the parties, if the plaintiff should bring home the knowledge of that fact to Pollock before he purchased. [*513

In the course of the trial a bond was shewn in evidence dated 8th January 1778, in the penalty of 500l., executed by Howard to Pollock, conditioned to perform the award of David Scott, John Glasgow, Leonard Robinson and Ezekiel Moore, and such others as these four shall choose, respecting the land in dispute ·between them.

An award subscribed by Scott, Robinson, and one Samuel Swindles, (mutually chosen by the other arbitrators,) was then offered in evidence by the defendants and excepted to, because not within the submission of the parties; and 1 Bac. Ab. 137, 138, was cited.

The court expressed regret that they were under the necessity of overruling the evidence.   It very probably was the honest intention of the parties, that a majority of the arbitrators should determine the dispute; but it is not so expressed in the bond, nor can the court intend it, or suffer the defect to be supplied by oral testimony.   1 Espin. 247.

The jury found a verdict for the plaintiff, and established the agreed marked boundary.

Referred to in 3 Binn., 189; 1 Watts, 51.
Cited in 7 Pa., 481, to show that claims under improvements may be classed among the imperfect rights to land.   Cited for the same purpose in 9 Pa., 196; 11 Pa., 113.
Cited in 46 Pa., 70, in support of the definition of "improvements" there given.