The opinion of the Court was delivered by
Duncan J.
Exceptions are taken to the charge of the Court, and their answers to certain questions proposed on the trial, by the counsel of the plaintiff in error. The answers must be considered in connection with the charge ; in fact the whole form one body of instructions delivered to the jury.
In framing these questions, it is to be observed, that the same question in substance is varied in form, and expressed in different language ; this unnecessary multiplication would naturally introduce some confusion, and it is not to be wondered, that in the progress of a trial, where the Judge *272 is called upon instantly to give answers to a variety of questions artfully formed and presented in different dresses, there should arise some inconsistencies; and although the general charge might be most accurate, an answer to questions suddenly put to a Judge might be erroneous.
It is contended, that there was error in this instruction, as it respects the settlement right of Jonathan Baity, under whom the defendant claims. The evidence of his settlement was correctly left to the jury. The Court gave the legal definition of a settlement right; and there is no doubt from the evidence but that Baity, and those claiming under him, have continued a personal resident settlement on the land from 1796. Baity never abandoned for one moment. He sold his improvement and settlement right to M'-Kee. M'-Kee and his tenant Alexander, lived on the land until M'-Kee’s death. M'-Kee conveyed to William and Oliver Watson in consideration of 400 dollars, and it lies not with Gilday to object that the consideration was not paid in Al'-Keé’s lifetime. On the 30th August, 1811, the Watsons took out a warrant including the improvement, interest to commence from the 1st March, 1796. It is objected, that the Court have given no answer to the second question, or if they did it was erroneous. It was put in this form, that if the jury believed there were agreements between Baity and Gilday, and M'-Kee and Gilday to divide the land between them, so as to give the lower half to Gilday, and the upper to MiKee, Gilday ought to recover. The Court in their charge first say, that if there was a promise to make partition by either Baity or M‘Kee, it being a parol promise without any partition being made, or money paid, or possession delivered, it would not be valid, under the statute of frauds and perjuries, against the defendant, a -purchaser for a valuable consideration without notice. So far the instruction was proper; for an agreement for division never carried into execution, either by writing or possession, but a possession altogether different, could not affect a purchaser without notice; and the answer to the question is nearly in the same words. But the Court, in their answer to the fifth and sixth questions, have laid down the law in terms too broad, and such as might mislead the jury.' For they say, that parol agreements to divide without possession, and without consideration, and without lines marked, is within the statute ; and that the parol agreement, *273 if any such there ever was, without lines,- and without possession, and without any consideration, is void. The jury might from this have concluded, that no parol agreement, without lines, possession, or consideration, whether Watson had notice at the time of his conveyance or before he took out his warrant, and paid the purchase money to the State, could be valid or binding.
Such agreements between settlers arfe usual, and if fairly made, without imposition, have ever received the sanction of the board of property, both before and since the revolution. They prevent litigation between the settlers. The, right is but a pre-emption, and they may agree to fix their respective pretensions, to locate the claims of each; and when they come to take out their office rights, their agreements have been constantly recognised by the board of property, and would be sanctioned by a court of justice. The fixing vague and uncertain claims between settlers, before they take out their office rights, would be of itself a consideration. But the agreement ought to be reasonably certain in itself, or capable of being reduced to a certainty, by something to which it refers.
In this case, the proper instruction to the jury would have been, to have left to them the existence of such agreement, and that it would, if clearly made out, be binding between the original"parties'; and at the same time have left it to the jury to say, whether it had not been abandoned, and rescinded between the parties ; the possession and improvement being made and continued in a manner totally inconsistént with the agreement: and to have instructed the jury, that although there'was such an agreement, which might be valid between the parties in equity, yet if secret, that is, not rescinded, or notice given to Watson; possession inconsistent, and if Watson was a purchaser without notice, equity would protect him ; and, indeed, it is so considered by the Court in their charge. But in the answers to the questions, they seem to consider it as altogether void even between the original parties. There is error in this.. As to Watson being a purchaser for a valuable consideration, the Court very properly stated, that it is of no consequence whether the Watsons paid what they had contracted to pay, in Ml Kee’s life-time or after his decease ; they were bound to pay what *274 they contracted to pay, and it was of no consequence to Gilday when they paid it.
If there was such an agreement as the plaintiff contended there was, and if it was such as would affect the Watsons, the limitation under the 5th section of the act of 25th March, 1783, which enacts, that no person or persons that now hath or have any claim to the possession of lands, &c. or the preemption thereof founded on any prior warrant, where no survey has been made, or in consequence of any prior settlement, &c. without other title, shall thereafter enter or bring any action for the recovery thereof, unless he, she, or they, his, her, or their ancestors, have had the peaceable possession of the same within seven years next before bringing such action or entry, could not apply to this case, for the possession was in its nature a mixed one; he had a possession, and if this agreement was binding the possession was not adverse ; nor did he, being out'of possession, claim by virtue of settlement or occupation alone; but likewise under an agreement with Baily, under whom Watson claimed. But the provision does not embrace this case, for neither party had a possession or settlement at the time of the passing of the act, nor for near 20 years after. It is obvious, that it is confined to claims existing at the passing of the act; and such was the decision at Nisi Prius, at Mifflin, in 1802, in the Lessee of Brice v. Curran, 2 Sm. L. 307. The word now being made use of, demonstrably evinces the intention of the legislature to confine it to claims then existing, and that it should not embrace future claims; there can be no other intrepretation. This construction was not noticed on the trial, nor has it been urged now in argument; but it is conclusive on words which convey a meaning so clear, express, and free from all ambiguity and obscurity. There was, therefore, error in the answer to the seventh question, that this section of the act extended to the claim of the plaintiff, and barred his recovery, he not being in possession of the very spot for which this ejectment is brought within seven years before its commencement. The judgment is therefore reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.-