## WOOD v. JONES.

Testator was the owner of a farm, as part of which he held a small piece of land which had been surveyed and improved under an old warrant not returned. His executor agreed to convey "all that tract known as the Annan (testator's) Farm." The adjoining tract occupied as parcel of the farm passed under this agreement, and an independent title from the Commonwealth procured by the executor enures thereto; for there was a previous valid title by survey and improvement from the Commonwealth to his testator.

In error from the Common Pleas of Chester.

*April* 5, 6. Assumpsit to recover back part of the purchase-money paid by plaintiff to defendant. It appeared that one Annan

entered into articles of agreement to sell Wood " all that tract of land known as the Annan Farm" for a gross sum, " the farm to be taken in a tract, be the same more or less, the lines to be run by the deeds and plot and made out as nearly as possible." Wood entered into articles with Jones to sell him. " the tract known as the Annan Farm, containing somewhere about four hundred and twelve acres, at $25 per acre—the land to be surveyed at Jones's expense." A survey was then made of three tracts, two of them containing four hundred and seventy-five acres and thirty-eight perches, and one twenty-five acres and three roods, and eight perches—the latter being supposed to be vacant. For this Annan took out a warrant, had a survey, and then made separate deeds for the respective tracts to Jones—it having been the understanding between himself and Wood, that the title was to be conveyed direct to Jones. The ground of the controversy was, that Annan, in making the contract with Woods, was acting as executor of his father, and he stated that he believed at the time there was vacant land adjoining, which it was not his intention to sell to Wood ; and that Wood, in making the survey for the purpose of selling to Wood, had procured nine acres of the vacant land to be included therein. It was, however, shown on the part of Wood, that the supposed vacancy had been surveyed under a. warrant to Taylor in 1785, which had never been returned, and that he had improved part of the land and conveyed the same to Annan's testator, and it had since been held by him as part of his farm. The question was left to the jury, whether the nine acres, for the price of which this suit was brought, was intended to be included in the contract between Annan and Wood; and if not, whether Wood had deceitfully procured it to be included in the survey and contract between himself and Jones. And these questions were decided affirmatively by the jury. The facts of the case are more fully stated in the opinion of this court.

. *Lewis*, for plaintiff in error, contended that there was no evidence that any land was foisted upon plaintiff other than he intended to receive. That his title was perfect, and would have been so, without taking the conveyance from Annan in his individual capacity, since it having been shown that the supposed vacant land was occupied by his testator as part of his farm—the new warrant procured by his executor enured to the benefit of the purchaser from him as executor.

*Darlington*, contra.—The contract was to sell what Wood had

bought, and no more. It is decided by the verdict that he had not bought these nine acres, and, though it might have been occupied by the testator, yet, having no title, it lay open to the first warrantee, and, as the executor had acquired this title in his own right, he was not estopped by his conveyance as executor, since there is no estoppel where a party acts in distinct capacities: Posten *v.* Posten, 4 Whart. 43 ; Sims *v.* Chew, 15 Serg. & Rawle, 197.

*April* 19. BURNSIDE, J.—The written evidence in this case demonstrates that Jones had no right to recover. The parol evidence supports that conclusion. In reviewing the case, I will not take up the multitude of errors assigned in detail, but state the law arising on the prominent and material facts which the paper book exhibits. There is no material contradiction in the relevant evidence. The Rev. Robert Annan died seised of a farm, part in Chester and part in Lancaster county. His son and executor, Doctor Samuel Annan, of Baltimore, sold this farm on the 9th of August, 1838, to Wood, the plaintiff in error, for the sum of ten thousand dollars, and described it in the written article as " all that tract well known as Annan's Farm, bounded by lands of S. Steele, T. Wood, and others. A deed, or full and sufficient title for the property, was to be delivered when certain payments were made. The farm was to be taken in a tract, be the same more or less. The lines were to be run by the deeds and plot, and made out as nearly as possible." Two days after the execution of this agreement, Wood sold, by articles, to Jones, and described it as all that plantation or tract of land known as the Annan Farm, bounded by lands of Steele, Lanbourn, Ross, Botherston, and said Wood's other land, and others, containing somewhere about four hundred and twelve acres, be the same more or less, at $25 per acre, to be surveyed at Jones's expense. It was further agreed that Jones was to receive the deed from Samuel Annan, the executor of Robert Annan. This latter arrangement was made to secure a portion of the purchase-money that Annan was to let remain on the land by his sale to Wood, for which Jones was to give Doctor Annan his bond and mortgage, and Wood was to procure the deed and possession from Annan. It was in evidence that the title of the Rev. Robert Annan was derived from James Taylor on the 12th of October, 1799, for four hundred and twelve acres, made up of different tracts, and another deed from Taylor of the same date for a piece of twenty-eight acres, for which Taylor had a warrant of the 28th of October, 1785, which was stated in the deed

to have been surveyed, but not returned in Westfallowfield township, Chester county, and which bounded on the larger tract. A copy of this warrant was in evidence, and there was evidence that Taylor had regularly cultivated a portion of the twenty-eight acre tract in all kinds of grain with the general tract, and that cultivation was continued by Annan and his tenants on the farm until the sale. Doctor Annan handed over to Wood the deed and a draft or plot of the four hundred and twelve acres, who placed them in the hands of his surveyor, to run off and ascertain the quantity. The surveyor ran by the plot of the four hundred and twelve acres, until he came to what was miscalled the vacancy, of which he included between nine and ten acres, and made the quantity four hundred and forty-nine acres and seventy perches. On the 2d of April, 1839, Doctor Annan, in pursuance of his agreement as executor of his father, conveyed to Jones, for the consideration of $10,000, the land within this new survey, after the agreement and sale to Wood; on the 9th November, 1838, Doctor Annan took out a warrant in his own name for the small tract as vacant land, and had it surveyed and returned. It was found to contain twenty-five acres, and one hundred and twenty-eight perches, which he sold to Jones for $400. This action is brought by Jones to recover back the price of the nine acres and three roods, which was paid for by Jones to Wood, and afterwards purchased from Doctor Annan.

The duty of Doctor Samuel Annan, as executor of his father's estate, was to have perfected the title on the Taylor warrant of 1785. It being reasonably descriptive, accompanied with an actual unbroken possession for near half a century, a survey, or resurvey, returned upon it by the proper deputy would have been accepted in the land-office. The Rev. Robert Annan had title to the twenty-eight acre tract; he had a warrant on which the purchase-money was paid, and an improvement on the ground. It was a part and portion of the "Annan Farm." In our acts of Assembly, as in common parlance, there is a difference between an improvement and a settlement. An improvement may be made by clearing land and cultivating it without residing upon it. A settlement requires an actual residence: Bixler *v.* Baker, 4 Binn. 218; Gilday *v.* Watson, 5 Serg. & Rawle, 267. Claims under improvements may be classed among the imperfect rights to land: Howard *v.* Pollock, 1 Yeates, 509; Smith *v.* Brown, Ibid. 516. A warrant such as this, and possession under it, is protected by the law, and it is only the Commonwealth that can call on the owner to perfect his title. Hence, Doctor Samuel Annan had no right to abandon the war-

rant of his father and the improvement under it, and take out a new warrant in his own name and for his own benefit.   It was a violation of his duty as executor, and a fraud on his father's estate.

Wood had performed his agreement to the letter with Jones when he procured the conveyance and possession from Doctor Annan.   Jones's title for the nine acres was good against Annan and every other person.   It was such a title as the Commonwealth would perfect by a patent; and if Jones committed the folly of buying it a second time from Annan, that purchase gave him no right of action against Wood.   Wood had bought all the Annan Farm for $10,000; the land in question was clearly a part of that farm.   The first, second, and third errors are fully sustained. The plaintiff had laid no ground to recover.   There was no fraud on the part of Wood in surveying the nine acres as a part of the Annan Farm, for it was a part of it, since his article embraced it. The case on the evidence was neither submitted to the Common Pleas nor to this court upon its true legal principles.

The judgment is reversed.