# Zubler *versus* Schrack *et al.*

*Sale of improvement right, when invalid.—Interest of settler is realty, and as such transmissible.—Official duties of surveyor, presumption in favour of.*

1. The sale of an improvement right made after the improver's death by a relative who settled his estate without legal authority, passes no title to the vendee: and in an action of ejectment by one claiming under him for a part of the land thus sold, the articles of agreement by which the sale was made, are not admissible in his behalf, nor is any evidence, therefore, admissible relating to the improvement as first made by the settler.

2. The interest of the settler, who has resided upon the land with his family for fourteen years, clearing and cultivating it, is realty, transmissible as such, and not as a chattel interest.

3. Where the land when settled upon belonged to the Commonwealth, no title by adverse possession can be acquired: and where the title of the plain-

tiff was by purchase in 1847, and that of the defendant by warrant and patent in 1855, the entry of the original settler in 1832 relates to neither, and the statute does not apply. A plaintiff can claim the benefit of the possession of a settler only by virtue of a valid conveyance.

4. Where a part of the survey of the settler was appropriated by the defendant's warrant, it was not necessarily void for so much, as an encroachment on the settlement right, nor is it to be presumed that the location of the warrant was in violation of the settler's rights: for the warrant might have been properly laid to include a portion insufficiently designated by the settler, and the presumption that the official duties of the surveyor and of the land office were performed, is in favour of, and not against the location made, in the absence of proof to the contrary.

5. Though the plaintiff in this case might have entered as a settler in his own right in 1847, at which time he came into actual possession of the land, he cannot claim as such where he manifested no intention so to do, but has claimed solely under the improvement right of the original improver.

ERROR to the Common Pleas of *Clinton county*.

This was an action of ejectment, brought June 7th 1856, by Adam Zubler against Jesse S. Schrack and John Delong, to recover a tract of timber land in Green township, containing about eighty acres.

The defendant, Jesse S. Schrack, claimed to hold the land in controversy under a warrant, dated December 14th 1855, on which there was a survey and return, dated July 21st 1856, and patent for ninety acres and one hundred and fifty perches.

The plaintiff claimed as the vendee of an improvement right, commenced in 1832 or 1833, by John Herring, at whose instance a survey was made, embracing one hundred and sixty-five acres and eighty perches, covering the Herring improvement and a greater part of the land in controversy.

On the trial the plaintiff, in support of his title, offered to prove the matters set forth in the opinion of this court, but which were rejected by the court below (JORDAN, P. J.). The rejection of this evidence was the principal error assigned.

*Mayer & Ball*, for plaintiff in error.

*G. F. Miller*, for defendants in error.

The opinion of the court was delivered, November 12th 1863, by

THOMPSON, J.—This case has been in this court before, and is reported in 10 Casey 38, where it appears that the admission of the evidence now complained of as being rejected in the court below was assigned for error, and the error sustained by a unanimous opinion of the court. If, therefore, there be error now in this record, it is ours, the court below having ruled in accordance with our former decision. "*Stare decisis*" expresses a rule which should always be adhered to, unless mani-

[Zubler *v.* Schrack *et al.*]

fest and mischievous error require a departure from it. That
no such error exists in our former decision in this record I think
may be easily shown.

In order, therefore, to a clear understanding of the *only* ques-
tion raised on this record, I extract from the plaintiff's paper-
book the offer of the testimony, the rejection of which consti-
tutes the sole assignment of error. He offered to prove as
follows :—

" That in 1832 or 1833, John Herring commenced an improve-
ment in Green township, Clinton county, and designated his
boundaries by a survey; that he died in 1847, leaving several
children; that a brother-in-law, after his death, undertook the
settlement of the estate in an informal way, leased the farm, and
bound out the children, and sold the improvement to Henry
Leamy by articles of agreement, dated April 9th 1847; that
Henry Leamy afterwards sold his right to the plaintiff on record;
that the possession has been kept up ever since, and the premises
farmed and cultivated every year; that John Wagner, his brother-
in-law, undertook to manage things; that plaintiff has kept pos-
session of the land in question by continuity of claim for a
period of twenty-one years prior to the institution of this suit;
that the plaintiff went into possession in 1847, under claim as
derived from John Herring."

It must be admitted that if the plaintiff entered into the pos-
session of the land in question under either a legal or equitable
title to Herring's improvement, as it is called, he should be per-
mitted to show when the improvement began, what was done
under it, and how he acquired the title to it. But it must be as
readily conceded on the other hand, that if the offer shows that
he had no such title, it was proper to reject the proposed evidence
in regard to that settlement; for if received it could not confer
title on the plaintiff. Nor would his former peaceable possession
be sufficient against the defendants, who are in under a judgment
of a competent court; so there was no error in the rejection of
that portion of the offer. Authority is not needed for principles
so plain as these.

The validity of Wagner's transfer of Herring's settlement to
Leamy scarcely requires remark. The offer, in detailing the
circumstances of the transfer, admits it to have been made with-
out authority, viz., that Wagner "undertook the settlement of
the estate in an informal way." This was no authority to con-
vey real estate, and he pretended no interest in the land himself
as the foundation of his right to convey. He was neither execu-
tor, administrator, nor guardian, nor was his action in pursuance
of any judicial order whatever. He was as completely without
authority to convey away the settlement right and divest the

[Zubler *v.* Schrack *et al.*]

interest of Herring's children, as the veriest stranger in the land. Yet, notwithstanding this, it is contended that his written transfer was evidence of title to be laid before a court and jury. But "*ex nihilo, nihil fit.*" If it amounted to nothing, it proves nothing.

It is true, that defective conveyances are sometimes evidence to show the extent of possession, where title is claimed under the Statute of Limitations. But in such cases, if the conveyance offered operate at all, it must be coeval with the entry of the disseisor. It is as *colour* of title that it may be evidence, and then it gives effect to the disseisin co-extensive with the boundaries contained in it. Without this, or some other designation, the disseisor could only hold by his actual enclosures, notwithstanding a continued adverse occupancy for twenty-one years. It is evident, therefore, that if one acquire colour of title, after half the period of the statute has elapsed, it will have no operation upon the original entry. It cannot operate to pass title, because it is insufficient for that, nor can it aid a claim under the statute, for the possession has not been held under it for the requisite period. Here the transfer of Wagner was in 1847, and the plaintiff was only in under it eight years. It had therefore no operation or effect in the case, even on the mistaken hypothesis that the Statute of Limitations was in it, and was properly ruled out.

It has been said in this case, but I think to very little purpose, for it is not the point of the case at all, that in early times improvements were sold as chattel interests. It is true, we have the sanction of such a practice in two cases, to be found in 1 Yeates, pp. 509 & 516. Improvements, as defined in the books, are mere inceptive rights, scarcely entitled to be classed as rights, and the early judges regarding them in this light, denominated them "*imperfect rights:*" Id. 509. An improvement is said to be, where anything is done on vacant land, unaccompanied by residence: 1 Yeates 509; 4 Binn. 213; 5 S. & R. 267; 7 Penna. S. Rep. 478. The Act of 30th December 1786, defines a settlement to be an "actual personal" residence on land, "with a manifest intention of making it a place of abode, and the means of supporting a family." Such a settlement would entitle the owner to a warrant for, not exceeding four hundred acres and allowance, including his improvements. Afterwards the Act of 22d September 1794 superadded the requisite of raising grain on the land. Where these requisites were complied with, the settler had an interest in land, which entitled him to a warrant and patent on the payment of the purchase-money, in preference to any other claimant. A mere improver had no such pre-emption right. The difference is thus manifest between a mere improvement

[Zubler *v.* Schrack *et al.*]

right and a settlement. The former was not recognised by our laws after 1786, while the latter was regarded as an essential step towards a perfect title. The transfer of the former, like a chattel right, will be good as against the owner; but not so the latter, as it was manifestly an interest in land. Many valuable farms in the Commonwealth are at this day held by no better or other title; and have descended from ancestors to their children, have been divided and sold by orders of Orphans' Courts, and been bound by judgments and mortgages. It is idle to suppose such a title is legally transmissible as a mere chattel.

The facts here are that Herring settled on the land, a part of which is in controversy, and resided there for thirteen or fourteen years, cleared land, cultivated, and supported his family on it during that time. By express law he had an interest which was real, and which was transmissible only as realty. I find no case of a sale of such an interest as a chattel, and I might say, especially are there none of sales ·of even mere improvements, by persons having neither title nor authority; which was John Wagner's position exactly.

But to do the learned counsel for the plaintiff in error justice, they do not seem to have placed the slightest reliance on this sale *ex vigore propria* as passing title. They base their hopes of reversal on other grounds entirely, as follows:

" The sole question to be determined in this event," say they, " is, would the offer of the plaintiff, as proposed to be proved, make out such a title, under the *Statute of Limitations*, as would enable him to hold the land as against the defendant ?"

Their claim is thus based exclusively upon a title by the Statute of Limitations. Now how this could be made out under the facts offered in evidence and rejected, I am not quite able to comprehend. These facts, as already stated, were that Herring was a settler on vacant lands of the Commonwealth; that he designated the boundaries, and lived with his family on the land, clearing and cultivating it until 1847, when he died. It is not pretended that his entry was upon land the title to which was out of the Commonwealth, and in some private owner who might be disseised. It was Commonwealth's land he was on. The language of the offer shows this, and nothing else. As the Statute of Limitations does not run against the Commonwealth, entry on her vacant land as a settler is of course referable to the permission which the law gives to enter with a view to acquire title. It cannot be adverse as against the Commonwealth, and no title by such possession can be acquired in such case. The defendant's title only began in 1855, and of course Herring's entry had nothing to do with it, nor the plaintiff's either, which began in 1847. The Statute of Limitations has nothing what-

[Zubler *v.* Schrack *et al.*]

ever to do with this case, and of course the plaintiff's was not
such a title under it as would enable him to "hold the land
against the defendant."

This view of the case disposes of Sailor *v.* Hertzogg, 10 State
Rep. 296. That was a clear case for the operation of the statute.
It was between persons, and what was decided was, that an entry
under a defective title was *colour* of title, and sufficed to define
the extent of the disseisor's claim. This was all right, and what
we say now.

Even if this were a case to which the statute might be appli-
cable, we said when it was up before, and there is no room to
doubt the correctness of the remark, that "Zubler could only
claim Herring's possession as enuring to his use, by virtue of
some conveyance, which we have seen he had not." The reason
was given "that if this were not so, the first intruder might
abandon his intention of holding adversely, and leave the pos-
session, and a succeeding one might enter and claim, without
authority a *quality* for the predecessor's possession, which he
had abandoned." We endeavoured to show, what was perhaps
a work of supererogation, that an adverse possession begun and
continued for a time, in order to be available to a successor,
must be transferred to such successor in some lawful manner.
This is as true as that property can only be rightfully acquired
with the° assent of its owner, or vested by operation of law.
As therefore an adverse possession of an occupier, although not
ripened into a complete title, is a step towards title, and is pro-
perty, like property it must be transmitted, so as to vest in a suc-
cessor a right to that which had been gained by such occupation:
Overfield *v.* Christie, 7 S. & R. 173; 5 State Rep. 126. But it
is not necessary to elaborate the idea, for the Statute of Limita-
tions has nothing to do with the case.

These views cover the whole ground, and more, occupied by
the plaintiff in error; and as they have shown not a shadow of
a right to a reversal of the judgment below, I ought, perhaps, to
leave the case without further or other remark; but it seems to
be thought that there are merits in the plaintiff's case beyond
this offer of testimony. The foundation for this idea must be
derived from the defendant's statement of his title, it is not
in the plaintiff's presentation of his case. Not for a moment
conceding the propriety of going beyond what is legitimately
before us, let us look at the *assumed* aspect of the case.

By the statement referred to, it appears that the defendant's
title commenced by a warrant and patent in 1855. The location
of the warrant, it seems, embraced a portion of the land included
in Herring's unofficial survey, not embracing any of his improve-
ments. Under this strictly legal title, Schrack recovered the

[Zubler v. Schrack et al.]

possession of the land as such in 1856, from the plaintiff. None of these things were in evidence, or offered to be proved on the trial. They may be gathered, as already said, from the defendant's counter statement.

Assuming these as facts, it is said that the warrant of the defendant encroached on the settlement right of Herring, in possession at the time of the plaintiff, and is void for so much. Now I say, in the absence of all testimony in regard to the encroachments, this is not necessarily so. There are many ways in which a portion of a settler's claim may be lawfully interfered with by the warrant-holder. The location may have been with his knowledge and consent. He may have determined to alter his boundaries. His designation of boundary may have been unreasonable, or the possession may have been derelict at the time. If any of these things existed, the warrant might rightly have been laid so as to include a portion of the land insufficiently designated by the settler. Shall we presume that *none* of these things did exist, and that the county surveyor violated his oath and his duty in including what he should have excluded, and did not note the interference on his survey as he was bound to do? *Omnia presumuntur rite esse acta* applies to him as well as to other officers. The ground of objection to the defendant's title is, that it appearing that a part of the Herring claim was covered by his warrant, it must be *presumed* that it was located in violation of the settler's rights. I hold, in the absence of any testimony to prove it, that the contrary is the legal presumption. The mistake consists in presuming that the officer committed a gross wrong without any proof of it. Or, that if he did right, and noted the interference in his return of survey, the land officers disregarded their duty by accepting it, and issuing a patent for the land. It inverts the doctrine of presumptions in favour of the honesty of officials, and requires us to presume them wrongdoers, before we reach the conclusion claimed. This, however, is all that need be said on this outside view of the case.

But it may be suggested that as Herring was dead, and his family dispersed, Zubler might have entered as a settler in his own right, in 1847. Possibly he might. But as the intent is of some consequence in making a settlement since the Act of 1786, there is nothing whatever to show that he did enter with the "*manifest intention* of making it a place of abode, and the means of supporting a family." He designated no boundaries as a settler, and in fact never thought of that independently of Herring's settlement. We need not resort to conjecture as to this matter, however, for in the offer of the testimony complained of as rejected, it is stated in plain words "that the plaintiff went into possession in 1847, *under claim as derived* from John

[*Zubler v.* Schrack *et al.*]

Herring.   He was therefore not a settler in his own right; nor had he a transfer of Herring's right; and, as already shown, the Statute of Limitations was out of the case.   He was, therefore, so far as appears to us, without any sufficient claim or title to divest the possession of the defendants, and the judgment must be                                    Affirmed.

WOODWARD, J., dissented.

STRONG, J., being absent at the time of argument, took no part in the decision.