## Dzmura *v.* Gyurik, Appellant.

*Easement—Vendor and vendee—Sewer—Equity.*

Where an owner of land subjects part of it to an open, visible, permanent, and continuous service or easement in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be. This is the general rule founded on the principle that a man shall not derogate from his own grant. Anyone taking the servient tenement, takes it subject to such easement; and if he attempts to interfere with its use, a court of equity has jurisdiction to restrain him, when the facts are undisputed as to the right.

Argued May 6, 1909. Appeal, No. 206, April T., 1909, by defendant, from decree of C. P. No. 3, Allegheny Co., Aug. T., 1908, No. 793, on bill in equity in case of Elijas Dzmura and Allgo Dzmura, his wife, v. Michael Gyurik. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity for an injunction. Before EVANS, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree awarding injunction.

*John Rebman, Jr.,* with him *A. B. Stevenson,* for appellants.—The plaintiffs' right to the sewer easement must be clear, otherwise they must establish it first by an action at law. Mowday v. Moore, 133 Pa. 598; Alexander v. Harris, 40 Legal

Int. 132; Fitzell v. Philadelphia, 211 Pa. 1; Penna. Coal & Coke Co. v. Jones, 30 Pa. Superior Ct. 358; Liquid Carbonic Co. v. Wallace, 219 Pa. 457; Woodroffe v. Hagerty, 35 Pa. Superior Ct. 576; Richards's App., 57 Pa. 105.

*Francis S. Bennett,* for appellees, cited: Grace M. E. Church v. Dobbins, 153 Pa. 294; Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540; Vollmer's App., 61 Pa. 118; Milne's App., 81 Pa. 54: Bitting's App., 105 Pa. 517; Manbeck v. Jones, 190 Pa. 171.

OPINION BY HEAD, J., December 13, 1909:

John Gyurik, the common ancestor in title of all the parties to this bill, was the owner of a lot of ground in the borough of Braddock fronting thirty feet on Washington street and extending back of the same width 110 feet to a public alley. Having concluded to permanently improve his property, he built two structures thereon, one fronting the street, the other the alley in the rear. Each building covered its respective front, and each occupied a depth of thirty feet. Each of the said buildings was so designed by him as to make, when completed, two separate tenements, so that each building could be occupied and used by two separate tenants. The wall which in each building divided it was used as a party wall for the joint benefit of the tenement on each side. The front building facing the street was so constructed that on the ground floor a small area way three feet in width gave access from the rear of the lot to each apartment. There was a public sewer in the alley at the rear of the premises. The common owner of the entire property could have, by separate lines of sewers, connected each of the four tenements with this public sewer. Not desiring to incur the expense which this would involve, he built but one sewer line from the alley in the rear to the building on the front part of the lot. This line was laid a short distance from and parallel to the west line of his property, and traversed the cellars of the two tenements, front and rear, on the west side of his property. The tenements on the east side, front and

back respectively, were connected by lateral lines with this main sewer, and in this manner each one of the four tenements was provided with a line for the disposal of its sewage.

By this general plan of improvement it was apparent that each of the tenements had the common use of a party wall, and the like use of the main sewage line, and all of these incidents of the general plan of improvement were open and visible to the eye of anyone who might become the purchaser or occupant of any one of the tenements. The lateral sewage lines already referred to, by which the tenements on the east side of the lot, front and back, were connected with the main line to the alley, necessarily crossed a portion of the property upon which the western tenements stood. It is apparent then that the common owner of the property, for the purpose of utilizing it as he conceived to the best advantage, had subjected the tenements, front and rear on the west side of his property, to an easement for sewage purposes in favor of those on the eastern part of the property.

If, with his property thus improved, John Gyurik had sold and conveyed to a purchaser the eastern tenement, front or rear, on his property, even though in his deed he may not have expressly granted an easement in favor of the property conveyed over that which he retained, the purchaser would nevertheless take such an easement because that was a part of the permanent improvement which he had made upon his property, and his conveyance of the land would carry with it the permanent improvements as he had created them and as they visibly existed on the ground.

The principle of law operating on such a state of facts and producing the conclusion above referred to is thus stated by Mr. Justice MITCHELL in Grace M. E. Church v. Dobbins, 153 Pa. 294: "The law on this subject is settled beyond question. Where an owner of land subjects part of it to an open, visible, permanent, and continuous service or easement in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be. This is the general rule founded on the principle that a man shall not derogate from his own grant."

When John Gyurik, therefore, so designed the permanent improvement on his own property that the easternmost tenements were provided with the necessary outlet for sewage by a visible lateral line extending through the cellars of the westernmost tenements respectively, in order to reach the main outlet to the alley, if he thereafter conveyed to another that easternmost tenement, he could not be heard to complain that his purchaser continued to vent the sewage from that tenement in the way which the grantor himself had expressly provided for that purpose. If he could not be heard to complain, and would not be permitted to interfere with such right, the defendants stand in precisely the same situation because they have succeeded to his title with a full knowledge of all the facts already recited.

When the present defendant undertook to cut the sewerage connection from the eastern tenement, now owned by the plaintiffs, the latter filed their bill which resulted in the injunction of which the appellant now complains. The able counsel for the appellant confined their argument chiefly to the proposition that this bill should be dismissed because a court of equity had no jurisdiction to enter the decree complained of. They base their argument on the proposition that the right of the plaintiffs to enjoy this easement is seriously disputed, and until such right had been determined in their favor by an action at law, a court of equity would be without jurisdiction.

It has been said so often by our appellate courts that it may now be considered as an elementary principle, that a court of equity will not by an injunctive decree enforce an alleged legal right, where the existence of such right is in dispute, until after it has been determined in an action at law that such right really exists. Notwithstanding the fact in later years the jurisdiction of courts of equity has developed to meet the necessities which come with changed conditions, it is still true that when the property rights of a citizen are fairly questioned, his privilege is to have those rights determined in a common-law action after a trial by a jury. But it is equally true that where the facts out of which the

alleged right must arise, if it exists at all, are undisputed and depend upon the application to those facts of certain fixed principles of law, there is no dispute to be settled by a legal trial.

This is the situation presented by this record. There is not in dispute a single fact on which the right of the plaintiffs to have their decree rests. The learned court below was therefore correct in determining that a court of equity had jurisdiction to enforce for the plaintiffs those rights which depended entirely on the application of the law to the facts averred in the bill and not denied in the answer.

We further agree with him in his conclusion that the dominant question in the case is controlled by the legal principle declared by Mr. Justice MITCHELL in the case already cited. Under such circumstances the decree compelling the defendant to restore the broken sewer connection and restraining him from thereafter interfering with it was nothing more than securing to the plaintiffs the unmolested enjoyment of the land they had bought with the permanent improvements thereon as they had been constructed by John Gyurik, and had since existed with the full knowledge of all the parties concerned.

The fact that Mary Gyurik, the immediate predecessor in title of the plaintiffs—probably in ignorance of her rights under the law, perhaps to avoid the possibility of the litigation that has resulted in this appeal—asked the defendant to sign a paper recognizing her right to maintain the sewer connection and that he refused to do so, was, as the court held, irrelevant. It destroyed no legal right that existed in her, it created none not previously existing in him.

Decree affirmed and appeal dismissed at the costs of the appellant.