## Blauser *v.* Carson, Appellant.

*Real property—Easements—Servitude—Apparent easements.*

Where a continuous and apparent easement is imposed by the owner of real estate on a part thereof for the benefit of another part, the purchaser at private or judicial sale, in the absence of an express reservation or agreement, takes the property subject to the easement or servitude, even though it is not mentioned in his deed.

An easement is such an interest in lands as under the statute of frauds and perjury cannot be conveyed by parol. It can be abandoned by parol agreement only where such agreement has been so far executed as to make it inequitable to rescind the same.

The erection of a gate on a road, over which neighboring owners have a right of way, will not necessarily defeat such owners' rights. It is a regulation of the means of entrance which may be for the common benefit of all, and if the use of the alley or road continues uninterruptedly, the mere presence of a gate cannot be regarded as an adverse possession.

Argued October 29, 1919. Appeal, No. 200, Oct. T., 1919, by defendant, from judgment of C. P. Centre Co., Dec. T., 1917, No. 3, on verdict for plaintiff in the case

of William Blauser v. Frank A. Carson. Before OR-
LADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and
KELLER, JJ. Reversed.

Trespass to recover damages for injuries to real es-
tate. Before QUIGLEY, P. J.

The facts are stated in the opinion of the Superior
Court.

Verdict for plaintiff for $6 and judgment thereon.
Defendant appealed.

*Errors assigned* were various rulings on evidence, the
charge of the court, answers to points and refusal to
grant a new trial.

*N. B. Spangler,* and with him *James C. Furst,* for ap-
pellant.—Where the use of an easement is apparent and
continuous the burden is on the owner of the land to
show that it was enjoyed under some permission or con-
tract, not consistent with the right claimed by the other
party: Gœdino v. Kane, 26 Pa. Superior Ct. 596; Pierce
v. Claud, 42 Pa. 102; Carter v. Tinicum Fishing Co., 77
Pa. 316; Wallace v. Fourth Presbyterian Church, 111
Pa. 170; Hudson v. Watson, 11 Pa. Superior Ct. 270;
Russel v. Woodbury, 53 Pa. Superior Ct. 624.

The mere erection of a gate across an alley by one of
several adjoining owners is not sufficient evidence of ad-
verse possession against the other owners: Nickels v.
Cornet Band, 52 Pa. Superior Ct. 145; Schmidt v. Lie-
berum, 54 Pa. Superior Ct. 500.

The doctrine of implied reservation is applicable to
the facts in this case: Held v. McBride, 3 Pa. Superior
Ct. 155; Overdeer v. Updegraff, 69 Pa. 110; Cannon v.
Boyd, 73 Pa. 179.

*Ellis L. Orvis,* and with him *William D. Zerby,* for ap-
pellee.

OPINION BY TREXLER, J., April 24, 1920:

There is an alley running from a turnpike across land formerly owned by Wilson now by Blauser, the plaintiff, to property in the rear formerly owned by McCoy. This alley was opened for many years, probably since 1823, was fenced and extended beyond the line of the Wilson property about 167 feet into the McCoy property and afforded access to the buildings on the McCoy lot and free and uninterrupted entrance was given to anyone who desired it.

In 1894 McCoy, the owner of the rear lot sold a portion of his property to Clara Liester. The portion sold included the part of the lane which extended beyond the Wilson lot and the one side of the lane formed the division line between the part McCoy retained and the part he sold off. In the deed to Liester, the property is described as "beginning at a post in an alley." The selling off of a portion of the McCoy lot left the house on the Liester tract and the barn and outbuildings on the part that McCoy retained, which was afterwards acquired by Carson, the defendant. There was a gate made in front of the McCoy barn. McCoy built a house close to the line and the occupants of his tract used the alley without interruption, using the gate at the house and the gate in front of the old stable. The owner of the front lot over which the alley ran had no part in the transaction between McCoy and Mrs. Liester, and as far as the easement across his property was concerned, it continued unaffected. Under the testimony submitted, there can be no doubt that when McCoy sold to Mrs. Liester the alley was a visible servitude, and Mrs. Liester took her land subject to it. The courts of Pennsylvania have in numerous cases recognized the doctrine of implied grant or reservation where the common owner parts with a part of his property and there is an apparent easement or servitude on one part for the benefit of another. We think that this principle applies to the case before us, In Geible v. Smith, 146 Pa. 276, we find the law stated,

"Where a continuous and apparent easement or servitude is imposed by the owner of real estate on a part thereof for the benefit of another part, the purchaser at private or judicial sale, in the absence of an express reservation or agreement, takes the property subject to the easement or servitude: Cannon v. Boyd, 73 Pa. 179; Overdeer v. Updegraff, 69 Pa. 110; Zell's Exrs. v. Universalist Society, 119 Pa. 390; Pierce v. Cleland, 133 Pa. 189; Manbeck v. Jones, 190 Pa. 171. In Grace M. E. Church v. Dobbins, 153 Pa. 294, quoted in Dzmura v. Gyurik, 41 Pa. Superior Ct. 398, Justice MITCHELL states, "The law on this subject is settled beyond question. Where an owner of land subjects part of it to an open, visible, permanent, and continuous service or easement in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be. This is the general rule founded on the principle that a man shall not derogate from his own grant." When Mrs. Liester got her deed the alley was recognized and used by both parties. As to the part which extended into the rear lot there could be no title by prescription prior to the time that McCoy sold to Liester, for one cannot acquire an easement over his own ground and when McCoy sold to Liester the right to pass over the front lot was not in question. The question between McCoy and Mrs. Liester was not one of an easement acquired by prescription but one of implied reservation, and if it appears that the easement was thus reserved it needed no further consent or user to support it.

The suit in question was brought against Carson by Blauser for breaking down the gate at the end of the alley. It was instituted before a justice of the peace and Carson made an affidavit that the title to land would come into question and it was removed to the common pleas. The court in commenting on the alleged breaking of the gate stated, "Regardless, however, of whether it was nailed or whether it was not, the question for you

to determine, as we view this case, is, did Mr. Alexander McCoy, in 1894, retain the use of this lane or driveway for himself and his successors in title? He certainly did not by formal reservation in his deed, and, as we now view it, a right by prescription would have to be gained by himself and his successors in title since the grant of 1894 to the plaintiff."

Here we think the learned trial judge was in error. He ignored entirely the principle of implied reservation. As stated above there was abundant evidence not only to show an implied reservation by an apparent easement but the subsequent conduct of the parties to the deed from McCoy to Liester shows they recognized the alley, used it jointly for eleven years, and located buildings in relation to it, and it was the only road used as a means of approach to the buildings. See Liquid Carbonic Co. v. Wallace, 219 Pa. 457.

Blauser acquired title to the front lot in 1903. In 1905 he purchased the Liester lot, and thus became the owner of the entire property upon which the alley in question was located. He erected a gate at the end of the alley where it joined the turnpike. When he bought the back lot, there was a visible easement for the benefit of the occupiers of the rear lots. He therefore bought with knowledge that the alley was for the joint use of the occupiers of the rear lots and the same implied reservation operated against him as against his predecessor in title, Mrs. Liester, with the added force of eleven years' recognition by the parties concerned. The jury should have been instructed if the facts above referred to were established by the testimony there was an implied reservation: Phillips v. Phillips, 48 Pa. 178.

We must remember the part of the alley across the front lot which Blauser acquired in 1903 remained unaffected by the transfer of title to the rear lot. The court consistently held to the theory that the defendant had to show a prescriptive title based upon uninterrupted use since 1894. To show an interruption or an

abandonment by McCoy, a number of witnesses were produced. One testified, "I was working for Mr. Blauser, and McCoy had horses back in there, and he called me up to witness whether he could use that alley to take his horses backwards and forwards there. Mr. Blauser said McCoy could use the alley as long as it wasn't soft. Mr. McCoy says if it is soft, I'll take my horses out down below." The narration of the other witness to the same transaction was, "Blauser asked McCoy to go over to Carson's to draw up a written article. Mr. McCoy said he wouldn't. Then Mr. Blauser said to Mr. McCoy, you darsen't go out through here while it is wet or muddy, and Mr. McCoy said all right."

The comment of the court was, "If you believe the testimony of the witnesses presented here on behalf of the plaintiff that he dealt with the plaintiff in securing the way out, it would in effect amount to an abandonment by him of the easement and the right to use the driveway in question, and it would bind the present owner of that strip of land, the defendant in this case." Even if believed we do not think this testimony would amount to an abandonment. The agreement was at best an engagement not to drive his horses over the alley in wet weather for the obvious reason that it would cut up the road. If the agreement was valid it is as broad as long for the agreement to cease using it in rainy weather was a recognition of the right to use it at all other times. Furthermore the testimony to overcome a right that has been established by prescription and therefore presumed to be by grant cannot be overcome by testimony of this character: Hudson v. Watson, 2 Pa. Superior Ct. 422, s. c. 5 Pa. Superior Ct. 456. An easement is such an interest in lands as under the statute of frauds and perjuries cannot be conveyed by parol: Huff v. McCauley, 53 Pa. 206. It can be abandoned by parol agreement only where such agreement has been so far executed as to make it inequitable to rescind the same: Hudson v. Watson, supra.

Unfortunately there are no pleadings in this case. As it goes back for retrial it is to be hoped that some means may be found to have the issue presented so that a definite conclusion may be reached, and the litigants may know what rights are determined by the verdict. Even if the right of the defendant to use the alley were conceded his right to tear down the gate or otherwise injure it would not follow. The erection of the gate by Blauser has nothing to do with the question as to the right of the owners of the McCoy lot to use this alley. It is a regulation of the means of entrance which may be for the common benefit of all, but if the use of the alley continues uninterruptedly, it cannot be regarded as adverse possession: Nickels v. Cornet Band, 52 Pa. Superior Ct. 145; Schmidt v. Lieberum, 54 Pa. Superior Ct. 500; Demuth v. Amweg, 90 Pa. 181. Defendant claims he merely did what was necessary in order to open the gate and secure an exit, on the other hand there is testimony that the gate was not fastened but that it opened easily. If the jury should find that the defendant committed a trespass in tearing down the gate or injuring it, that would not necessarily determine the right to the use of the alley. Of course if the defendant had no right in the alley, Blauser could secure the gate in any way so as to prevent defendants passing.

The judgment is reversed with a new venire.