## McGurk v. Piecuch

*Eli Louis Cooper*, for plaintiff.
*William F. Starsinic*, for defendant.
BROWN, JR., J., December 15, 1937.—

## I. *Statement of the Pleadings*

This is a bill in equity to have defendant, the owner of the premises adjoining plaintiff's, ordered to restore the joint drainage system between plaintiff's and defendant's houses which defendant disconnected and to pay damages for the loss caused plaintiff by defendant's having severed the connection. The facts alleged in support of this desired relief are that since the year 1900 the sewage and waste pipe from the house now owned by plaintiff had run into the sewage pipe on defendant's property leading into the city sewer in the street; that a continuous user of this pipe by plaintiff's predecessors in title and by plaintiff from that date until the recent disconnection has created an easement in favor of plaintiff's land, and that defendant's wilful interference with this property right was unjustified. The answer denies that the user has been adverse and of long duration, and, although admitting that defendant did disconnect the pipe, denies that defendant's act was unjustified. It also alleges that defendant gave plaintiff written notice that she was going to disconnect the pipe.

From the admissions in the pleadings, and the evidence, the facts are found as follows:

## II. *Findings of Fact*

1. Plaintiff is the present owner of premises 2833 Amber Street, Philadelphia.

2. Defendant is the present owner of premises 2835 Amber Street, Philadelphia, which adjoin plaintiff's property.

3. During the year 1901 or 1902, while Thomas Cahill was owner of 2833 Amber Street and his mother-in-law, Sarah McCort, was owner of 2835 Amber Street, they agreed orally to construct a drainage system whereby the sewage from both houses was to be drained into one pipe leading to the city sewer in the street.

4. During the year 1901 or 1902, in pursuance of this oral agreement, a joint drainage system was constructed, the pipe from premises 2833 connecting with the pipe under premises 2835 which in turn connected with the sewer in the street.

5. The use of the drainage pipe on premises 2835 for draining the sewage from premises 2833 continued uninterrupted from the time of construction until March 30, 1937, at which time defendant, then owner of premises 2835, caused the pipe leading from premises 2833, then owned by plaintiff, to be disconnected from the pipe on her land.

6. The construction of the above mentioned system of drainage for the two properties grew out of the relationship between Thomas Cahill and Sarah McCort, namely, that of son-in-law and mother-in-law, and was for their mutual benefit.

7. Title to premises 2835 passed, upon the death of Sarah McCort, to Elizabeth L. Tracey and John McCort, and from them by deed to defendant on April 25, 1931. Title to premises 2833 was conveyed by Thomas Cahill to David Goldie on March 9, 1925; by Goldie to Louis Gossemer on March 19, 1925, and by Gossemer to plaintiff on December 14, 1925.

8. Thomas Cahill and his successors in title have never made any assertion of a right to the use of the pipe on premises 2835 hostile or adverse to any of the successive owners thereof.

9. Defendant gave plaintiff no notice, oral or written, that defendant intended to disconnect the drain pipe leading from plaintiff's premises to the pipe under defendant's land before she did so.

10. Plaintiff's property suffered no damage by reason of defendant's failure to give plaintiff notice of her intention to disconnect the drain pipe.

### III. *Discussion*

The fundamental problem in this case is the determination of the existence or nonexistence of an easement to the use of a drainage pipe on defendant's land for the benefit of plaintiff's land. If there is such an easement, then defendant had no right to interfere with the drainage of plaintiff's sewage through that pipe: Geissel et ux. v. Supplee et al., 95 Pa. Superior Ct. 358; Dzmura v. Gyurik, 41 Pa. Superior Ct. 398; and, conversely, if there is no easement, defendant could withdraw her permission to the use of the pipe whenever she felt so inclined, unless there are unusual circumstances which would estop her from so doing: Lehigh & N. E. R. R. Co. v. B. & P. Ry. Co., 228 Pa. 350; Baldwin v. Taylor et al., 166 Pa. 507.

Easements, being interests in land and so within the statute of frauds, can be created only by grant or by prescription, which is based upon the fiction of a lost grant: Huff v. McCauley, 53 Pa. 206; Goddard on Easements (8th ed.) 122; 9 R. C. L. 745. Plaintiff must, therefore, either be able to point to a deed giving her or one of her predecessors in title the right to use the pipe on defendant's land, or be able to show an uninterrupted use of the pipe under a claim of right by her and her predecessors for a period of at least twenty-one years. Since plaintiff does not rely upon an actual grant as the basis of the

alleged easement, and since the evidence negatives any possibility of there ever having been such a grant, the sole ground upon which an easement can be supported is that of prescription.

The evidence concerning the inception of the user is extremely meager, yet there is enough to show that it was entirely permissive. Sarah McCort being dead, Thomas Cahill alone testified to the facts surrounding the construction of the joint drain. He stated that around 1901 he received a notice from the Board of Health to the effect that he would have to alter his drainage system so that it would run into the city sewer rather than into the well in his yard; that he and Mrs. McCort, his mother-in-law, engaged a plumber and discovered from him that the two houses, his and Mrs. McCort's, could be drained by means of one pipe, and that in compliance with their wishes the drain was so constructed. The casualness of the transaction is shown by the following portion of Cahill's testimony: "We gave them the job, and they put the drain in, and the inspector passed it. He underdrained it and I paid him and that is all there was of it."

The family relationship between the participants, that of son-in-law and mother-in-law, and the fact that it obviously was to their mutual advantage to have both drains installed as one show that the use of the pipe on Mrs. McCort's land was merely permissive. In no way does it appear that Cahill, either at that time or at any subsequent time, ever thought that he had acquired a right in his mother-in-law's land hostile or adverse to her, and it certainly does not appear that he ever asserted any such right.

Upon the death of Mrs. McCort, title to premises 2835 passed to Elizabeth L. Tracey and John McCort. There is no evidence, however, as to the date of her death. Therefore, we are not concerned with the possibility that the permissive user became adverse as the result of such transfer. It is just as probable that her death occurred

less than twenty-one years ago as it is that it occurred more than twenty-one years ago since the next registered conveyance is the one to defendant in 1931. But, even though it were a fact that the transfer of title from her did take place more than twenty-one years ago, still that transfer, unsupported by other evidence showing hostility, would not have been enough to convert the permissive user into one that was adverse: Bennett v. Biddle, 140 Pa. 396, 404; Fidler v. Rehmeyer, 34 Pa. Superior Ct. 275, 285.

A user which commences permissively is presumed to continue as such: Pribeck et al. v. McGahan et ux., 314 Pa. 529, 535. In order to rebut this presumption there must be evidence showing a positive assertion of right hostile to the owner, and brought home to him: 19 C. J. 889. See also Johns v. Johns, 244 Pa. 48, 54. There is no evidence in this case of such an assertion made by Cahill or any of the succeeding owners of premises 2833; each apparently quietly accepted conditions as he found them, and did not renounce the authority under which the use commenced.

In the face of such a complete dearth of facts essential to the establishment of a prescriptive right, it cannot be said that plaintiff had a legal status other than that of a mere licensee on March 30, 1937, the date of the severance by defendant.

A license, being in effect only an authority, may be revoked at any time the licensor sees fit to do so: Lehigh & N. E. R. R. Co. v. B. & P. Ry. Co., supra, 355; Baldwin v. Taylor et al., supra, 512, and defendant's disconnection of the pipe was clearly a revocation of the license since it was inconsistent with the exercise of it: Goddard on Easements (8th ed.) 530. See also Crosland v. Pottsville Borough, 126 Pa. 511. The only theory upon which defendant's revocation could be held improper is that of estoppel. However, in order to hold that a licensor is estopped from revoking a license, the licensee must have made such expenditures, other than the original consid-

eration, and done such work in reliance upon the continuance of the license that the parties cannot be placed in statu quo: Baldwin v. Taylor et al., supra, 512 to 514; Huff v. McCauley, supra, 208, 209. Plaintiff and her predecessors in title have done nothing which would make it inequitable to permit defendant to revoke the license. Indeed, they have all profited by the joint drainage system at no expense to themselves.

Although defendant had a right to revoke plaintiff's license by disconnecting the drain, she could not exercise this right without first warning plaintiff of her intention to do so in order that plaintiff might have an opportunity to protect her property by installing a separate drain. In the ordinary case of a license to walk across the land of another no notice of revocation is required since the licensee suffers no material damage by the unexpectedness of the revocation. However, in the event that the licensee has property upon the land of the licensor, notice is required, for otherwise the licensee would lose his property if he were not given an opportunity to remove it. See 37 C. J. 299. Plaintiff was in much the same predicament as the licensee in the latter situation. Without reasonable warning of the fact that the drainage pipe from her house was to be disconnected from the sewer, she would have no opportunity to provide for an adequate means of disposal of the sewage and rain water. The kind and amount of damage which would be caused by the sudden interruption of drainage from a house is obvious, and, consequently, the owner should have timely warning that such an event is going to take place. As was said in Kay v. Pennsylvania Railroad Co., 65 Pa. 269, 273: "If, therefore, an owner of property has been accustomed to allow to others a permissive use of it, such as tends to produce a confident belief that the use will not be objected to, and therefore to act on the belief accordingly, he must be held to exercise his rights in view of the circumstances so as not to mislead others to their injury, without a proper warning of his intention to recall his permission.

. . ." Although these words were used in relation to a personal injury caused by the unexpected revocation of a license, they are peculiarly applicable here. Furthermore, plaintiff had been acting in good faith in using the drainage system which she had found in the house when she purchased it, for defendant never once made her objections to its use known to plaintiff. Consequently, since plaintiff was not wilfully and obstinately persisting in a use to which she had no right, she was acting *bona fide* and was entitled to notice: Hepburn v. McDowell et al., 17 S. & R. 383, 384; Lehman v. Murtoff, 7 Pa. Superior Ct. 485, 490. See also Crosland v. Pottsville Borough, supra, 522.

Defendant alleged in her answer that through her attorney she had given plaintiff written notice that the pipe would be disconnected. Attached to the answer are copies of three letters, dated March 13, 20 and 23, 1937. Each one is addressed to plaintiff, and each one is signed by defendant's attorney. They all state that the sewer is to be disconnected, and that it will be necessary for plaintiff to build a separate sewer. But at the trial defendant did not attempt to prove that any of these letters had ever been sent, and plaintiff explicitly denied ever having received a letter about the sewer until two days after the severance. Robert O. Bowen, a plumbing supervisor of the Bureau of Health, testified that defendant's attorney sent him copies of letters addressed to plaintiff giving her notice of defendant's intention to disconnect the sewer, and that he wrote plaintiff a letter on March 15, 1937, informing her that he had received such copies and that she should take steps to protect her property. If plaintiff had received this letter it probably would have been sufficient notice to her, but there is no proof that she did receive it. An inference arises upon proof of having properly addressed, stamped and mailed a letter that the letter was received in due course by the addressee: Fox et al. v. Davey Compressor Co., 318 Pa. 331, 334; Neubert v. Armstrong Water Co., 211 Pa. 582, 587, but Bowen testi-

fied merely that he "wrote" plaintiff a letter, and, certainly, proof of having written a letter without more, is no evidence that the letter was ever received. Since defendant does not contend that she ever orally informed plaintiff of her intention, plaintiff's denial of the receipt of any notice is conclusive of the question.

Plaintiff testified with respect to her damages that rainwater, which had formerly run from the rain spouts into the sewer through the joint system, backed up in her cellar and rotted the kitchen floor; that the plaster on the ceiling of the kitchen had fallen down along with the paper on the walls, and that the yard had sunk in four or five feet where the toilet well had been. However, her only statement as to the actual cost of repairing the damage was that she had paid $10 to have the kitchen ceiling repaired. John F. Slattery, a painter and carpenter, testified that a week prior to the trial he had examined the premises and estimated that the cost of repairing the damage to the floor and foundations of the kitchen would be $45, but he was unable to say what the cost of papering and painting would be.

Of course, the only damages which plaintiff can recover are those occasioned by defendant's failure to give due notice since that was the extent of defendant's duty; that is, defendant must pay only for the loss caused by not warning plaintiff of the fact that the drain pipe was going to be cut off, and not for all the loss caused by disconnecting the pipe. Using that as the limit of damages, it is apparent that there is not sufficient evidence to make an intelligent finding as to the extent of loss. There is no testimony as to what the damages would have been had plaintiff constructed another drain to the sewer in the street immediately upon discovering the severance, as she should have done instead of waiting six months to file this bill. It is probable that her kitchen floor would not have rotted, that the foundations would not have weakened, and that the yard would not have sunk in if she had acted promptly to relieve the situation. In fact,

there might have been no real damage at all. But we are left wholly uninformed as to anything of this sort. "Mere proof of the breach of a legal obligation will not warrant a recovery in more than nominal damages. To recover more there must be affirmative evidence that actual damages resulted from such breach and a measure furnished by which their amount may be fairly ascertained": Greenlee v. West, 71 Pa. Superior Ct. 468, 472. "Where a legal right has been invaded, and substantial damages claimed, the extent of which cannot be ascertained with certainty, nominal damages may be recovered": Eckman v. Lehigh & W.-B. Coal Co., 50 Pa. Superior Ct. 427, 434. See also Rice v. Hill et al., 315 Pa. 166, 173; Bigham v. Wabash-Pittsburg T. Ry. Co., 223 Pa. 106, 113. Consequently, in the absence of proof as to what loss was suffered, plaintiff can recover only nominal damages for the breach of the obligation owed her by defendant.

It is within the sound discretion of this court to assess the costs according to the equity and justice of the case: Pennsylvania Co. for Insurance, Etc., v. Philadelphia National Bank, 195 Pa. 34, 37; Miller v. Dilkes, 251 Pa. 44, 52; Melown et ux. v. Penn Real Estate Co. et al., 121 Pa. Superior Ct. 209, 215, 216. Plaintiff has failed to establish her main contention, namely, the existence of an easement, but she has shown that defendant failed to perform the duty of giving her reasonable notice of her intention to revoke the license. Since neither party has been wholly successful, the costs should be apportioned equally between them: Goodman v. Goodman et al., 122 Pa. Superior Ct. 8, 12.

## IV. *Conclusions of Law*

1. Plaintiff has failed to establish an easement to the use of the drain pipe under premises 2835 Amber Street, Philadelphia, for the benefit of premises 2833 Amber Street, Philadelphia, either by express grant to her or one of her predecessors in title or by an adverse user uninterrupted for a period of at least twenty-one years.

2. The use of the drain pipe under premises 2835 Amber Street by the successive owners of premises 2833 Amber Street, from Thomas Cahill up to and including plaintiff, was by virtue of a license.

3. Defendant had the right to revoke this license at any time, provided she first gave plaintiff reasonable notice of her intention to do so.

4. Defendant did not give plaintiff reasonable notice of her intention to revoke the license before she did so by severing the connection on March 30, 1937.

5. Plaintiff, having failed to show with any degree of certainty the extent of her loss by reason of her failure to receive due notice, is entitled to nominal damages only.

6. The costs should be divided equally between plaintiff and defendant.

### V. *Decree Nisi*

AND NOW, December 15, 1937, upon consideration of the foregoing case, it is ORDERED, ADJUDGED and DECREED that defendant pay plaintiff the sum of one dollar ($1) as nominal damages, and that the costs of this proceeding are to be paid equally by plaintiff and defendant.

### *Opinion Sur Exceptions to Adjudication*

Per Curiam, April 12, 1938.—

This case is before the court in banc upon plaintiff's execptions to the adjudication of the trial judge, and after reviewing the record, we are of the opinion that he properly determined that no easement exists to the use of the drainpipe under defendant's land for the benefit of plaintiff's property.

We adopt, without repeating, what was stated by the trial judge in his adjudication under the head of "Discussion", and point out that in this case the two properties were owned by *different* persons at the time when the drainage system was constructed. In Dzmura v. Gyurik, 41 Pa. Superior Ct. 398, and in Geissel et ux. v. Supplee et al., 95 Pa. Superior Ct. 358, relied upon by plaintiff, the

properties belonged to *one person* at the time the pipes were laid, and so the decisions therein were based upon the rule that "where an owner of land subjects part of it to an open, visible, permanent, and continuous service or easement in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be", which is, of course, "founded on the principle that a man shall not derogate from his own grant."

There is no easement in this case "by virtue of an implied grant", as plaintiff contends, because there was no "grant". No property, real or personal, was transferred by deed or writing. There was merely an oral agreement between plaintiff's predecessor in title and defendant's predecessor in title that the drainpipe in the property now owned by plaintiff was to be connected with that under the land presently owned by defendant. True, in Dzmura v. Gyurik, supra, it was pointed out, at page 400, that "even though in his deed he (the common owner) may not have expressly granted an easement in favor of the property conveyed over that which he retained, the purchaser would nevertheless take such an easement because that was a part of the permanent improvement which he had made upon his property, and his conveyance of the land would carry with it the permanent improvements as he had created them". But it is thus clear that the easement was based upon the deed conveying the property, the grant of the land carrying with it the easement.

Furthermore, in the Dzmura case, the sewer lines "visibly existed on the ground" and "through the cellars" (pages 400-401), and in the Geissel case the pipe line was "known" to the parties and "represented" to the purchasers "as their source of water supply" (page 360). In the present case, however, neither plaintiff nor defendant knew that the drainpipe in plaintiff's property was connected with that under defendant's land until shortly before defendant caused the pipe leading from

plaintiff's property to be disconnected from the one under her land. The pipes and their connection were underground, and so not visible to plaintiff or defendant, or to their respective predecessors in title.

Exceptions 1 and 2 are to the findings of fact of the trial judge, and as there is ample proof to sustain them, we adopt them as the findings of fact of the court.

Exceptions 3 and 4 are to the "Opinion" and exceptions 5 to 8 inclusive, to the conclusions of law of the trial judge, and as he correctly determined the issues presented, we adopt his conclusions as the conclusions of law of the court, modifying, however, the first conclusion by inserting the words "or implied" after the word "express" and before the word "grant".

Exception 9 is to the decree nisi, and for reasons stated, we adopt it as the final decree to be entered.

Plaintiff's exceptions are, therefore, dismissed; a final decree in the form and terms of the decree nisi will be entered.