## Ackerman's Estate

*Bryan & Evans*, for petitioner.
*R. M. Orcutt*, for exceptants.

WAITE, P. J., July 22, 1938.—Samuel J. Ackerman died testate March 5, 1937, leaving surviving as his next of kin his widow, Birdena Ackerman of the Borough of North East, Erie County, Pa., and two married daughters, Pearl L. Gretsinger and Ruth M. McClelland, residing in Buffalo, New York. By the terms of his will his entire personal estate and an undivided one-half interest in his real estate is bequeathed to his widow and the remaining one half of the real estate to his two daughters. The matter is now before the court on petition of the widow to have certain real estate set aside to her as her $500 exemption under subsections (a), (g), and (h) of section 12 of the Fiduciaries Act of June 7, 1917, P. L. 447.

The petition for exemption as originally filed was withdrawn to correct the description of the property claimed. The petition now before us was filed December 27, 1937, and claims the house and lot situated in the Borough of North East, Erie County, Pa., which was the home of decedent and claimant for many years prior to his death. The lot upon which the house is situated comprises about five eighths of an acre of land and has a frontage of 85 feet along the south side of Main Street, which is the main thoroughfare through said borough and is known as U. S. Highway Route No. 20. In addition to the house and lot, the petition also claims the right to the use of gas from a gas well located upon an adjoining lot and which is piped to and has been used in this house for many years. N. P. Fuller, a banker, and G. A. Watt, a real estate agent of North East, were appointed appraisers and have appraised the property described in the petition at a valuation of $5,000. To this appraisement and petition for exemption exceptions have been filed on behalf of the said daughters of decedent.

A hearing was had upon the petition and exceptions, testimony taken, and the matter argued before the court. From the testimony taken it appears that the real estate

claimed by the widow was originally a part of a larger tract purchased by decedent in 1905, containing about 29½ acres and which has been used as a fruit farm. It further appears that in 1927, the remaining portion of the tract was surveyed and plotted, and some portions of the land as originally purchased and some of the lots plotted have subsequently been sold leaving a balance of about 18½ acres undisposed of. In addition to the home on Main Street claimed as exemption, another house has been erected on one of the lots fronting on Loomis Street and adjoining the unsold portion of the tract. The home claimed as the widow's exemption is, according to the testimony, a very comfortable two-story frame building with a cement basement, lighted with electricity, and supplied with gas from the well on the adjoining lot.

Fifteen exceptions to the exemption and appraisement have been filed on behalf of the daughters. These may be classified under three general headings: (1) Inadequacy of valuation; (2) injury to the value of the remaining portion of decedent's real estate; and (3) inclusion of the use of the gas well located on another lot. In our opinion none of these exceptions can be sustained. The valuation placed upon the property by the appraisers appointed by the court is in our opinion sustained by the weight of the testimony produced at the hearing. It also appears from the testimony that the home chosen by the widow as her exemption has been assessed separately and apart from the balance of decedent's real estate for a period of 19 or 20 years as well as separated by the subsequent survey and plot. In our opinion the allowance of this exemption will not detract materially from the value as a fruit farm of the remaining portion of decedent's real estate. It is urged that a portion of the land for a fruit stand along the main thoroughfare is essential to the use of the remaining portion as a fruit farm. It is true that many farms do have such stands along the main thoroughfares but it is also true a much larger number

do not have and, although such a stand might be desirable, it is not in our opinion essential and its absence will not materially detract from the value of the remaining portion of the land. The testimony shows that the gas used in the house and claimed in the exemption comes from a well on an adjoining lot and has been so used by decedent for many years. This would in our opinion constitute an easement for the benefit of the property claimed and a servitude upon the adjoining lot where the well is located, established by decedent in his lifetime, and to which the widow is entitled as a part of her claim for exemption. See Blauser v. Carson, 74 Pa. Superior Ct. 223.

Courts look with favor upon and construe liberally laws relating to property claimed for their exemption by widows and children of decedents. The language of section 2, subsections (a) and (d), of the Intestate Act of June 7, 1917, P. L. 429, as amended by the Act of July 11, 1917, P. L. 755, relating to the $5,000 exemption of a surviving spouse when there is no issue, in its essential features is almost identical with subsections (a) and (g) of section 12 of the Fiduciaries Act, supra, and authorities construing the former may properly be considered in determining the law relative to the latter.

In Leathery's Estate, 38 York 93, the court held, in the words of the headnote:

"The act [June 7, 1917, P. L. 429, sec. 2 (a) P. L. 431, 432, and the amendatory Act of July 11, 1917, P. L. 755] does not restrict the spouse in the selection of any class or kind of real estate, nor does it allow any relative or other heir or creditor to restrict the choice.

"The valuation placed by sworn appraisers upon the property selected by the spouse must be respected, unless there is clearly shown fraud or collusion, or such evident undervaluation of the property as may suggest fraud or collusion."

See also opinion of Judge Barnett in Troutman's Estate, 30 Dist. R. 708:

In Wallace's Estate, 6 W. N. C. 503, discussing the meaning of the words "without injury to or spoiling the whole" used in the Act of April 14, 1851, P. L. 612, as well as in section 12 (g) of the Fiduciaries Act of 1917, the court says:

"Do they mean . . . that if, in the appraisers' judgment, the proposed partition will render the remainder of the tract of less market value, by the acre, than if sold in connection with the portion to be separated, that then they must report that it cannot be made 'without injury to, or spoiling the whole'? Or do they not mean, that if, in their opinion, the proposed partition does not materially lessen the intrinsic value of the remaining land, when devoted to the purpose which nature and its then condition designate as its most productive use, they must report that it can be made 'without injury to or spoiling the whole'?"

Neither does the act, by its words or necessary implication, intimate that the widow's preferred interest in a tract of land should be sold for the mere purpose of enhancing the market value of the remainder going to the creditors or heirs. The primary object of the act should not be defeated to enhance the market value of its secondary object.

The house and lot together with the use of the gas claimed as exempt constitute no part of the farm of decedent, but was at the time of decedent's death and for many years prior thereto a separate property assessed as a house and lot. The valuation of $5,000 placed upon it by the appraisers is in our opinion a fair value for the same.

The exceptions are therefore dismissed, and the property described in the petition will be set aside to the widow as her $500 exemption upon payment to the executor of the estate of the difference between the said exemption and the appraised value of the same.